UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

04-cr-801 (PKC)

-against-

OPINION AND ORDER

SHELDON FULLER and ENRICO THOMAS,

Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

Sheldon Fuller and Enrico Thomas, each of whom represents himself pro se, have filed separate motions for sentencing reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF 809, 815, 822.) Fuller and Thomas were co-defendants in a six-week trial that took place in 2006, which related to a marijuana-distribution organization that the government dubbed the "Two Mile Posse." The jury found both men guilty on ten counts, which included substantive RICO and RICO conspiracy charges with a predicate act of murder, specifically as to the carefully planned killing of two rival drug dealers. Fuller and Thomas were both sentenced to a mandatory statutory term of life. 18 U.S.C. § 1959(a)(1). At the time of their crimes, Fuller was age 19 and Thomas was age 21.

While this Opinion and Order decides the motions of both defendants, the Court has reviewed the motions independently of one another and considered each defendant's unique personal characteristics, arguments and submissions. Each defendant argues that an intervening

change in law, personal rehabilitation and relative youth at the time of the offense amount to extraordinary and compelling circumstances that warrant a sentence reduction.

As will be explained, the claimed intervening changes in law do not apply to the sentence of either defendant, the remaining arguments do not identify extraordinary and compelling circumstances that warrant a sentence reduction, and the section 3553(a) factors continue to weigh against a sentence reduction. The motions of Fuller and Thomas will each be denied.

LEGAL STANDARD.

"Before it can reduce a term of imprisonment or release a defendant under § 3582(c)(1)(A), a district court must 'find[ ] that . . . extraordinary and compelling reasons warrant such a reduction.'" United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) (alteration in original) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). District courts have "broad discretion" when considering such motions and are free "to consider the full slate of extraordinary and compelling reasons that may warrant an imprisoned person's release." United States v. Amato, 48 F.4th 61, 66 (2d Cir. 2022) (citation and internal quotation marks omitted).

At the same time, applicants must satisfy "a demanding standard." Fernandez v. United States, 146 S. Ct. 1292, 1302 (2026). "'Extraordinary' means 'most unusual,' 'far from common,' and 'having little or no precedent.' 'Compelling' means 'tending to convince or convert by or as if by forcefulness of evidence.'" Id. (internal citation omitted; quoting Webster's Third New International Dictionary 807, 463 (1976)).

"The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason'" for a sentence reduction. United States v. Brooker, 976 F.3d 228, 237-38

(2d Cir. 2020) (emphasis in original) (quoting 28 U.S.C. § 994(t)); see also U.S.S.G. 1B1.13(d) ("Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.").

The government does not dispute that Fuller and Thomas have administratively exhausted their claims.

SHELDON FULLER.

A. Background.

Fuller's circumstances and the basis for his motion have not meaningfully changed since the Court issued an Order of January 26, 2021 that denied Fuller's previous motion for a sentence reduction. (EF 791.) The Court need not recount in detail the circumstances of Fuller's conviction and sentence, but notes that at the conclusion of trial, a jury found him guilty on ten counts, including six counts related to murder and conspiracy to murder in aid of racketeering and in connection with a drug crime. (See id. at 4.) The Court sentenced Fuller to a term of imprisonment of life plus two terms of 120 months to run consecutively. (See id. at 4-5.) Fuller's life sentence was mandatory pursuant to the murder-in-aid-of-racketeering statute, which prescribes a sentence of "death or life imprisonment . . . ." 18 U.S.C. § 1959(a)(1).

Fuller's prior motion emphasized the health risks presented by the Covid-19 pandemic as well as his personal rehabilitation during his term of incarceration. (See ECF 784, 791.) The January 2021 Order summarized Fuller's pursuit of the educational opportunities

during his incarceration and the positive family relationships that he has fostered from afar while serving his sentence. (ECF 791 at 3-4.)

The January 2021 Order observed that "[t]he denial of [Fuller's] application does not foreclose the possibility of a new application at some point in the future." (Id. at 5.) In affirming the denial of Fuller's motion, the Second Circuit similarly observed "that Appellant Fuller has engaged in significant efforts to improve and rehabilitate himself while incarcerated and commends those efforts. We note, as did the district court, that '[t]he denial of [t]his application does not foreclose the possibility of a new application at some point in the future.' United States v. Fuller, No. 04-cr-801, 2021 WL 260121, at *3 (S.D.N.Y. Jan. 26, 2021)." (ECF 807.)

B. Discussion.

Fuller's renewed motion relies upon a Policy Statement of the United States Sentencing Commission codified at U.S.S.G. 1B1.13(b)(6) (the "Policy Statement"). The Policy Statement states:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Id.

To the extent that Fuller cites Concepcion v. United States, 597 U.S. 481 (2022), as reflecting a change in law under the Policy Statement, that reliance is misplaced. Concepcion applied the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (Dec. 21, 2018), to the Fair

Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010), regarding crack-cocaine sentencing disparities under 21 U.S.C. § 841. See 597 U.S. at 486-89. But Fuller was not convicted or sentenced in connection with an offense involving crack cocaine. Concepcion does not present in a change in the law that warrants relief to Fuller pursuant to the Policy Statement.

Concepcion also emphasized that district court judges are afforded broad discretion to consider a variety of materials in both an initial sentencing and an application to modify a sentence, subject to limits set by Congress and the Constitution. Id. at 494-95, 498-501. A district court may weigh post-sentencing rehabilitation, unrelated amendments to the advisory Sentencing Guidelines and intervening changes of fact or law. Id. at 494-95, 498-501. Concepcion's overview of a district court's discretion on sentencing matters does not reflect a change in law.

Fuller also cites 18 U.S.C. § 3553(a)(6), which states that a court must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." He points to district court decisions that have granted motions for sentencing reductions to movants who received lengthy sentences for crimes of violence, including murder.

For example, in United States v. Clark, 2021 WL 1066628 (S.D.N.Y. Mar. 18, 2021), Judge Chin granted a motion for sentencing reduction filed by a defendant who had served 85 percent of a 360-month sentence, noting that the defendant was sentenced for a non-violent offense and that the original sentence was "exceedingly harsh" and issued under then-mandatory Guidelines. Judge Chin also noted the defendant's record of rehabilitation and the institutional strains caused by the Covid-19 pandemic, and concluded that these considerations,

in combination, were extraordinary and compelling. Id. at *4. He concluded that because the defendant served more than twenty years of a Guidelines-mandated sentence for a non-violent crime, the section 3553(a) factors weighed in favor of release. Id. at *4-5. See also Reynolds v. United States, 2022 WL 1444167 (E.D.N.Y. May 6, 2022) (reducing sentence of 52-year-old defendant from 42 to 36 years based upon defendant's time in state custody, conditions caused by the Covid-19 pandemic and evidence of rehabilitation, but noting that defendant had an additional 17 years left on his sentence) (Garaufis, J.); United States v. Scarpa, 2020 WL 6591455 (E.D.N.Y. Nov. 11, 2020) (reducing sentence of a "seriously ill man" with cancer who had served thirty-two years of his 482-month sentence after being convicted of conspiracy to commit murder) (Korman, J.).

District courts have also granted motions for sentencing reductions where a life sentence was mandated by statute. In United States v. Snype, 683 F. Supp. 3d 351 (S.D.N.Y. 2023), Judge Chin granted a motion brought by a defendant who had served approximately 21 years of a life sentence required by the so-called "three strikes" law, 18 U.S.C. § 3559(c)(1), that applies to persons convicted in a United States court of a violent felony on three separate occasions. The defendant's earlier offenses took place at age 18, 19 and 22, and he committed the underlying offense at age 41. Id. at 354-55. Judge Chin found extraordinary and compelling circumstances based upon the defendant's youth at the time of his prior crimes, evidence of his rehabilitation, the medical needs of defendant's loved one, his age of 63 and the harsh conditions of confinement created by the Covid-19 pandemic. Id. at 359-64. He concluded that 21 years of imprisonment for the offense appropriately accounted for the section 3553(a) factors. Id. at 364-66. See also United States v. Johnson, 754 F. Supp. 3d 305 (E.D.N.Y. 2024) (reducing sentence of defendant who had served 28 years of a life term required by the "three strikes" statute based

upon defendant's youth at the time he committed prior crimes, the sentence's "excessive length," evidence of rehabilitation, a supportive victim submission and the failing health of defendant's mother); United States v. Qadar, 2021 WL 3087956 (E.D.N.Y. July 22, 2021) (reducing sentence of defendant who had served 18 years of a life term mandated by statute in light of defendant's medical conditions, the effects of the Covid-19 pandemic, the illness of defendant's wife and evidence of rehabilitation) (Ross, J.).

Other courts have granted motions to defendants who received life sentences pursuant to the then-mandatory Guidelines, which were later made advisory. See United States v. Tellier, 2022 WL 1468381 (S.D.N.Y. May 10, 2022) (reducing sentence of 61-year-old defendant who served 29 years of a Guidelines-mandated life sentence imposed for substantive RICO and RICO conspiracy convictions that included predicate acts of murder and attempted murder) (Schofield, J.); United States v. Lugo, 2022 WL 732153 (E.D.N.Y. Mar. 11, 2022) (reducing sentence based on defendant's stroke and resulting vulnerability to Covid-19, the sentencing disparity between defendant's Guidelines-mandated term of life and the thirty-year sentences of his co-defendants, and evidence of rehabilitation) (Gershon, J.).

These decisions provide helpful guidance but also underscore the fact-intensive, defendant-specific considerations that guide a sentencing-reduction motion. Many involve defendants of an advanced aged with severe illnesses or unusually harsh sentences that were imposed when the Sentencing Guidelines were mandatory and not advisory. The Snype and Johnson decisions turned on the unique circumstances of the seldom-used "three strikes" sentencing law. Such considerations do not apply to Fuller, whose life sentence was mandatory pursuant to the murder-in-aid-of-racketeering statute, which prescribes a sentence of "death or life imprisonment . . . ." 18 U.S.C. § 1959(a)(1),

The Bureau of Prisons website reflects that Fuller is currently 47 years old. Fuller points out that he committed his crimes at age 19 and urges that the Court should weigh his relative youth at the time of his offenses. He argues that a mandatory sentence of life does not account for his lack of maturity during the time when he participated in criminal activities, including his susceptibility to peer pressure and his limited sophistication when interacting with his own counsel, law enforcement and prosecutors. Fuller states that he lacked impulse-control and "thinking skills" at age nineteen. (ECF 809 at 21-22.)

As in his prior motion, Fuller emphasizes his progress in rehabilitation. He notes that he has obtained a GED degree, worked for five years in a furniture-making program, taken life-skills and business courses, is taking college courses, and works as a "suicide watch company" member. (ECF 809 at 17.) He states that he has mentored other inmates in BOP custody, has no disciplinary record of violent incidents and has "gained pro social skills and positive energy." (Id.) He reports strong connections with family and friends, who he states will help him find employment if released. (Id.) An attachment to his memorandum states that Fuller is subject to an ICE detainer and indicates that he likely would be deported to Jamaica. (Id. at 28.)

Fuller also has submitted letters written by friends and family members. (ECF 815.) His daughter age 24, describes a strong and loving relationship with Fuller. (Id. at 6.) His son, age 26, has worked for three years in the Jamaica Constabulary Force, and describes Fuller as a source of support and guidance from afar. (Id. at 7.) Supportive letters are also submitted by Fuller's cousin and 12-year-old nephew, among others. (Id. at 9-12.)

The Court applauds Fuller's efforts toward rehabilitation, the productive use of his time during incarceration and his warm relationships with family members. For its part, "the

Government recognizes that the defendant appears to have engaged in substantial rehabilitation efforts . . . .” (ECF 820 at 8.) The Court also affords weight to Fuller’s young age at the time he committed his crimes and the particular hardships faced by a person who begins a life sentence at a younger age as opposed to later in life.

But in light of the inapplicability of Concepcion, Fuller’s motion is based upon his rehabilitation, which, under 28 U.S.C. § 994(t) and Brooker, cannot alone amount to extraordinary and compelling circumstances that warrant a sentence reduction. To the extent that Fuller’s relative youth at the time of his offense and sentencing might support a finding of extraordinary and compelling circumstances, the section 3553(a) factors weigh against relief at this time. As recounted in the January 2021 Order, Fuller has been in custody since October 2004 and he has now served 22 years of a sentence of life plus two terms of 120 months to run consecutively. (See ECF 791 at 4-5.) Fuller and a co-conspirator executed two other drug dealers, and, as noted at his sentencing, he participated in “a lying-in-wait murder. It was planned, and carefully choreographed with the two shooters at the door, making sure that each of the victims were taken out.” (ECF 400 at 9.) The seriousness of the offense, the need for just punishment and the goals of deterrence weigh against granting the motion on the present record.

ENRICO THOMAS.

A. Background.

In October 2024, Thomas first filed a motion for a sentencing reduction, which he then voluntarily dismissed prior to the filing of a government response. (ECF 810, 816.) He filed the present motion on August 8, 2025. (ECF 822.) The government filed a response in opposition (ECF 826) and Thomas filed two reply submissions, which appear to be substantially identical (ECF 827, 828). In his reply, Thomas specifically requests that his sentence be reduced

to a term of 30 years, and argues that a reduction to 360 months would satisfy the sentencing goals of section 3553(a). (ECF 827.)

As mentioned, Thomas was charged with ten counts related to his participation a marijuana-distribution organization that the government dubbed the "Two Mile Posse." After a six-week trial, the jury found Thomas guilty on all counts, including six counts involving the murder of two rival drug dealers. At Thomas's sentencing hearing, the Court described the murders as "premeditated executions. They were lying-in-wait murders." (2/8/07 Tr. at 22.) In its statement of reasons, the Court observed that "Mr. Thomas was there, present, to facilitate the murders, though he was not a shooter. He was not a shooter, but he was there. He came back, he participated in, he participated in the planning of, and he facilitated by watching the fire escape and by firing the weapon into the lobby, facilitated the murders and participated in the conspiracy to commit the murders." (2/8/07 Tr. at 22.) The Court observed that Thomas was age 26 at the time of sentencing. (Id. at 23.)[1]

The Court sentenced Thomas to a term of life imprisonment, plus 120 months to run consecutively. (ECF 393; see also 2/8/07 Tr. at 26.) Thomas's life sentence was mandated by 18 U.S.C. § 1959(a)(1). The Court rejected Thomas's argument that his sentence was "unfair, inappropriate, unconstitutional, cruel and unusual," explaining that "this defendant was an active participant in the murder, though not a shooter, and there was substantial basis for the jury's verdict." (2/8/07 Tr. at 26.)

---

[1] To the extent that Thomas's motion also describes the history of a proceeding in the District of Nevada, it appears to be included in error. (ECF 822 at 4-5.) In addition to describing the proceedings before the undersigned, his memorandum appears to summarize United States v. Ward, et al., 08-cr-283 (APG) (D. Nev.), a case in which Enrico Thomas is not identified on the docket a defendant. An individual named Terrence Thomas, who has a different Bureau of Prisons registration number, was a defendant in that case. In the unlikely event that Enrico Thomas was a defendant in the Ward proceeding, this Opinion and Order addresses only the sentence imposed in this case, United States v. Thomas, 04-cr-801 (PKC) (S.D.N.Y.), and expresses and implies no view whatsoever on any sentence issued in United States v. Ward, et al., 08-cr-283 (APG) (D. Nev.).

Thomas's direct appeal of his conviction and sentence were affirmed by summary order. United States v. Shaw, 354 Fed. App'x 439 (2d Cir. 2009). The Court later denied Thomas's petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, which advanced the argument that the two murder victims were not killed in connection with a marijuana-distribution enterprise and that the murders were instead motivated by purely personal disputes. Thomas v. United States, 2018 WL 4006785, at *1-2 (S.D.N.Y. Mar. 9, 2018).

B. Discussion.

First, Thomas relies upon Amendment 829 of the advisory Sentencing Guidelines, an age-related Policy Statement that amended U.S.S.G. 5H1.1 to advise that "a downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses . . . ." But Amendment 829 was not made retroactive, and, on November 1, 2025, section 5H1.1 was deleted by subsequent Amendment 836. See, e.g., United States v. Cummings, 2025 WL 3239812, at *2 (S.D.N.Y. Nov. 20, 2025) (Marrero, J.). Even if Amendment 829 were still in effect and had been made retroactive, it would not have applied to Thomas, whose life sentence was imposed based on statutory prescription and not the advisory Guidelines. There is no circumstance where Amendment 829 could have supported a finding of extraordinary and compelling circumstances at to Thomas.

Second, Thomas emphasizes his progress toward rehabilitation, describing his devotion to family, changed character and desire to help others. He states that his "moral development took years of painful reflection and personal grief." (ECF 822 at 10.) He states that while incarcerated he has undertaken numerous rehabilitation programs, including life-skills programs. (Id. at 10-11.) Thomas describes himself as a "shining example that positive change is possible" and states "that there is nothing left to achieve in this case by him remaining

incarcerated." (Id. at 11, 15.) He states that he has maintained prison jobs and argues that he has a strong work ethic. (Id. at 19.) Thomas does not elaborate on his prison jobs, though records submitted by the government indicate that he has worked as an orderly, with his work assignment periodically interrupted by his designation to a special housing unit. (ECF 826-1.)

Thomas annexes exhibits that appear to include a character reference written by "C. Melton," a "Senior Officer Specialist" in the BOP, as well as what appear to be curriculum records. Likely due to the limitations of facility technology, these records as submitted are largely illegible. (ECF 822 at 33-37.) The Court assumes the character reference to be positive and that the records substantiate Thomas's assertion that he has availed himself of course offerings. Thomas also annexes family photos, the supportive letter of a lifelong friend, and letters from two daughters who describe Thomas as a dedicated father and source of support, (ECF 822 at 44-52.)

In opposition, the government has submitted Bureau of Prison records that report nine disciplinary violations by Thomas. (ECF 826-1.) This included February 2020 and May 2019 incidents involving the possession of a dangerous weapon, a February 2018 assault of an inmate who Thomas struck with his fists, his possession of drugs in 2016 and the possession of three homemade weapons concealed in a cell ladder in 2010. (Id.) Other incidents appear minor, including insolence to staff and "being unsanitary or untidy." (Id.)

Third, Thomas points out that he was 20 years old at the time he engaged in the criminal conduct that underlies his sentence. He states that his conduct was reckless, immature and irresponsible and that his relative youth at the time of his offenses, while not absolving his conduct, should be weighed by the Court. (Id. at 19-21.)

Fourth, Thomas argues that sentencing disparities weigh in favor of a reduced sentence. He observes that in fiscal year 2020, the average sentence in a federal district court for a murder conviction was 255 months and the median sentence was 228 months. See United States Sentencing Commission, 2020 Annual Report and Source Book of Federal Sentencing Statistics, at Table 15.[2] The Court notes that in 2007, the year of Thomas's sentencing, the average sentence in a federal district court for a murder conviction was 253 months and the median sentence was 216 months, though these sentences varied widely depending on the defendants Criminal History Category under the Guidelines.[3] Thomas also cites a variety of cases in which a district court granted motions for a sentence reduction to a defendant convicted of a violent crime, including murder. (ECF 822 at 12-17.)

Fifth, Thomas revives the unsuccessful argument that he raised in his section 2255 petition, arguing that the two murder victims were not killed in furtherance of racketeering or a narcotics conspiracy. (Id. at 24-25.) He states that there was a "fundamental unfairness in holding him responsible for murders that were not, in fact, part of the charged drug conspiracy in his case" and that the victims "were killed due to separate personal disputes and retaliatory violence unrelated to any conspiracy to distribute narcotics." (Id. at 24.)

The Court has considered Thomas's submissions and concludes that he has not demonstrated extraordinary and compelling circumstances that warrant a sentence reduction. The Court credits the sincerity of Thomas's goals for self-improvement, his descriptions of his remorse and the assertion that he has matured during his time in prison. But Thomas's letter is short on specifics and the disciplinary record filed by the government is reason for pause.

---

[2] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/2020-Annual-Report-and-Sourcebook.pdf

[3] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2007/Table14_0.pdf

Thomas acknowledges that his record is "not spot free" (ECF 822 at 10) and courts have noted the difficulty of maintaining a clean disciplinary record in prison. See United States v. Lopez, 2020 WL 6298061, at *5 (D. Haw. Oct. 27, 2020). Even so, the record as to Thomas falls short of the "substantial rehabilitation" that can weigh in finding an extraordinary and compelling circumstance. See, e.g., Johnson, 754 F. Supp. 3d at 313-14 (describing applicant's "exemplary" record as a "model inmate", including zero infractions during 28 years of incarceration, the recruitment of inmates to participate in facility programs, course certificates and volunteer work); Snype, 683 F. Supp. 3d at 356-57 (summarizing staff letters describing applicant's "remarkable" disciplinary history and "ample guidance" to younger inmates and "rookie staff members," as well as "substantial" personal savings accrued from prison jobs); Clark, 2021 WL 1066628, at *4 (noting movant's single disciplinary infraction for violent conduct during 23 years of incarceration); Scarpa, 2020 WL 6591455, at *2 (noting facility's description of applicant as an "extraordinarily model prisoner" and apparent 21-year record of no disciplinary infractions). The Court implores Thomas to continue to work toward his rehabilitation by availing himself of the educational, employment and volunteering positions available to him, and to avoid conduct that invites a disciplinary infraction and undermines his progress.

The Court affords no weight to Thomas's argument that his sentence is fundamentally unfair because his two murder victims were killed due to a personal dispute and not in connection with a narcotics organization. The Court rejects this argument on the merits for the reasons set forth in its Order denying Thomas's motion under section 2255. 2018 WL 4006785, at *1-2. The argument would otherwise fail because the Supreme Court has held that "the supposed invalidity of a conviction is not among the 'extraordinary and compelling reasons' that justify compassionate release"; this is because granting relief under section 3582 in such a

circumstance would "circumvent[ ] the exacting requirements of § 2255." Fernandez, 146 S. Ct. at 1302. Fernandez bars Thomas's attempt to re-litigate his section 2255 motion.

Thomas's additional arguments do not demonstrate extraordinary and compelling circumstances. He has pointed to authority to support the proposition that persons convicted of murder in a federal district court are sentenced to a range of prison terms, but that is less a product of unfair disparities than the individualized nature of a prison sentence and the different statutes that govern courts' sentencing decisions. The Court affords some weight to Thomas's relative youth at the time he committed his crimes. To the extent that Thomas's age at the time of his offense and sentencing might support a finding of extraordinary and compelling circumstances, the section 3553(a) factors weigh against relief at this time. Thomas has served 22 years of a sentence of life plus 120 months to run consecutively. The seriousness of the offense, the need for just punishment and the goals of deterrence weigh against granting the motion on the present record.

CONCLUSION.

Sheldon Fuller's motion for a sentence reduction is DENIED. Enrico Thomas's motion for a sentence reduction is DENIED. The Clerk is respectfully directed to terminate the motions. (ECF 815, 822.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 13, 2026

COPIES MAILED TO:

Sheldon Fuller
Reg. No. 10317-208
USP Tucson
U.S. Penitentiary
P.O. Box 24550
Tucson, AZ 85734

Enrico Thomas
Reg. No. 57101-054
USP Pollock
U.S. Penitentiary
P.O. Box 2099
Pollock, LA 71467